**UNITED STATES of America,**

v.

**John W. HINCKLEY, Jr.**

**Criminal No. 81–0306(PLF).**

United States District Court, District of Columbia.

Nov. 21, 2006.

Robert Richard Chapman, Kasimer & Annono, P.C., Falls Church, VA, Thomas Edwin Zeno, Sarah Townsend Chasson, U.S. Attorney's Office, Washington, DC, for United States of America.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the government's request to modify John W. Hinckley, Jr.'s conditions of release set forth in this Court's December 30, 2005 Order. Upon consideration of the request, Mr. Hinckley's opposition, the government's reply, the statement of position by St. Elizabeths Hospital, and the entire record in this case, the Court will modify the conditions of release to reflect Mrs. Hinckley's role as the sole custodian for her son during the current Phase III visits, but will not amend it in any other way.

## I. BACKGROUND

Pursuant to this Court's December 30, 2005 Opinion and Order, Mr. Hinckley was permitted seven conditional release visits to his parents' home: three visits of three nights' duration and four visits of four nights' duration, all of which were subject to multiple conditions. After Mr. Hinckley completed six of these seven visits, on August 1, 2006 he requested that he be allowed additional four night visits of no specific number in the same format and under the same conditions as those permitted by this Court's December 30, 2005 Opinion and Order. The government opposed the request. The Court heard brief oral argument on this motion during a conference call with counsel on August 11, 2006. On August 18, 2006, the Court issued an Order rejecting the government's argument, and granting Mr. Hinckley's request based on its determination that he did not present a danger to himself or others if permitted to make visits to his parents' home under the conditions set forth in the Order accompanying the December 30, 2005 Opinion. The Court set a hearing on an anticipated new petition, to begin on November 6, 2006.

On September 11, 2006, Mr. Hinckley submitted a notice to the Court indicating that the Hospital was in the process of preparing a petition for expanded conditions of release that would not be ready in time for the November hearing date. For that reason, Mr. Hinckley proposed postponing that hearing until such time as the Hospital's proposal was ready. The government opposed such a postponement, arguing that an additional hearing was needed in view of certain information and changes in the conditions of the Hinckley household that had occurred in the interim. At a status conference on this issue held on October 23, 2006, the government pointed specifically to a number of concerns, including the health of Mr. Hinckley's parents, and their ongoing ability to serve as his custodians. At that time, the government was awaiting the report of its

expert, Dr. Robert Phillips. On October 31, 2006, Dr. Phillips' report—addressing the continuation of Mr. Hinckley's conditional release in view of the changes in the health of his parents, presently serving as the responsible parties under the terms of the December 30, 2005 Order—was submitted under seal and *in camera* for review by this Court, and was provided to Mr. Hinckley and to the Hospital.

Based on Dr. Phillips' report, the government in a November 3, 2006 notice to the Court requested that the Court modify conditions in the December 30, 2005 based on the record before it to (1) formalize the existing practice established by the Hospital removing Mr. Hinckley, Sr. as a responsible party for his son, (2) add a condition requiring that at least one of Mr. Hinckley's siblings be present at each visit to provide feedback to the Hospital and assist Mrs. Hinckley, as needed (although not to act as responsible parties themselves), and (3) permit the government's experts to continue to assess Mr. Hinckley's conditions of release on an ongoing basis through February 2007, regardless of whether the anticipated petitions are filed by Mr. Hinckley and/or the Hospital at that time.

## II. DISCUSSION

The Court agrees with the parties that, in view of Mr. Hinckley, Sr.'s declining health, and the fact that he is no longer capable of acting as a responsible party for his son, this Court's Order should be changed to reflect the practice of the Hospital since September 2006 that Mrs. Hinckley should act as the sole custodian for Mr. Hinckley, Jr. The Court does not, however, see the need to *require* the participation of Mr. Hinckley's siblings during the visits to his parents' home under the conditions set by the December 30, 2005 Order. The Hospital and Dr. Philips are in agreement that Mrs. Hinckley is perfectly adequate as the sole responsible party for her son. There is no suggestion that Mr. Hinckley would relapse or face a relapse in so short a time period that the involvement of his siblings is a necessity.[1]

In addition, the Hospital opposes mandatory involvement of Mr. Hinckley's siblings not only as unnecessary, but also as potentially detrimental to the therapeutic goal of Mr. Hinckley adjusting to the environment of his parents' home. The Hospital reasons that the requirement of having Mr. Hinckley's siblings at every visit could hinder his ability to adjust by introducing the artificial element of siblings who do not live there. To that concern, the Court would add its concerns that Mr. Hinckley's siblings do not live close to their parents, that their participation in these visits is contingent upon their own ability to rearrange their schedules and travel to their parents' home, and that undue pressure on them to participate in the visits could possibly create unnecessary stressors in their relationship with their brother.

Although it is clearly important that the Hospital receive feedback that is reliable and as objective as possible, Mrs. Hinckley's ability to provide this feedback has never been brought into question to such a degree that her son's visits should be conditioned upon the feedback of others.

---

1. At the previous hearing on this issue, the experts agreed, and the Court made a finding of fact that:

   Were Mr. Hinckley to experience a relapse of his Axis I disorders, that relapse would not occur suddenly, but rather would occur gradually over a period of at least weeks or months. A relapse would not occur during the course of the conditional releases proposed by the Hospital.

   *United States v. Hinckley,* 407 F.Supp.2d 248, 264 (D.D.C.2005).

Rather, Mrs. Hinckley must remain vigilant, and the Hospital must take steps to ensure that it receives timely and constructive feedback from the one other person who has contact with Mr. Hinckley during each of his visits—Dr. John L. Lee. Under the conditions of the December 30, 2005 Order, Dr. Lee is already required to report to the Hospital after every visit on his meeting with Mr. Hinckley. The Court expects that those reports, along with the reports of Mrs. Hinckley, and the extensive debriefing that occurs after each visit will more than suffice to provide the Hospital with the feedback that is required. While the involvement of one or more siblings in recent visits has been a welcome addition, both as a means of bringing Mr. Hinckley closer to his extended family and in assisting Mrs. Hinckley with certain practical aspects of the visits such as driving, requiring such involvement is not necessary to ensuring the safety of Mr. Hinckley and the public. To the extent that Mr. Hinckley's siblings choose to continue to be involved in these visits (as non-custodians), the Court will formalize their participation in providing the Hospital with feedback about that visit.

The government also requests that its experts continue to examine Mr. Hinckley, and report to the Court at the end of February 2007, regardless of whether Mr. Hinckley and the Hospital file petitions for expanded conditions of release, as currently anticipated. The Court does not see the need to rule on this request at this time. Because the parties are all in agreement that such a hearing is anticipated, the Court assumes that Mr. Hinckley will participate in any examinations that are requested, as he has in the past, in the time before the hearing. If, for any reason, the anticipated spring 2007 hearing does not take place, the Court will consider any motions of the government to address interim conditions, just as it has in this instance.

Accordingly, it is hereby

ORDERED that Mr. Hinckley is permitted additional visits, of no specific number, to continue under the conditions and strictures enumerated in the Order to issue this same day. These visits may continue until such time as the Court rules on Mr. Hinckley's and/or St. Elizabeths Hospital's next petition for enlargement of the terms of his conditional release, anticipated in February 2007, or until further order of the Court; and it is

FURTHER ORDERED that the parties shall meet to discuss future hearing dates on the anticipated February 2007 petitions for enlargement in the terms of Mr. Hinckley's conditional release, and shall submit to the Court on or before December 1, 2006 those dates that they propose for a hearing on those petitions. The Court is currently available during the weeks of March 12, 19, and 26, or during any week in April.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued on December 30, 2005, and in the Memorandum Opinion issued this same day, it is hereby

ORDERED that the Court will permit (subject to successful conclusion of each) an indefinite number of (Phase III) visits to Mr. Hinckley's parents' home outside the Washington, D.C. area for four nights, subject to the following conditions:

1. Mr. Hinckley is being allowed a limited conditional release under the supervision of his mother. He is not permitted to leave his mother's supervision at any time during the course of the conditional release except where the Hospital's plan for

his acclimation to his parents' community provides for time spent away from his mother's supervision.[1] The time to be spent outside her supervision will be of limited duration, never to exceed more than ninety (90) minutes and within a finite geographic area, to be determined by the Hospital.

2. Mr. Hinckley will be allowed an indefinite number of visits to his parents' home outside the metropolitan Washington D.C. area with the purpose of acclimating him to his parents' community and permitting him to engage in the Phase III activities discussed in the December 30, 2005 Opinion, each visit of a duration of four nights, or 100 hours. The success of each visit will be thoroughly assessed by the Hospital before a subsequent visit is permitted.

3. Itineraries will be developed by the Hospital and submitted, under seal, to the Court. Those itineraries also will be provided to defense counsel and to counsel for the government. If the Hospital deems it necessary, it can create and submit an individual itinerary for each visit, or the Hospital may submit a single, more generalized itinerary for every two visits. Each itinerary shall be submitted two weeks prior to the visit or visits to which it pertains. In particular, the itinerary should include the details as to the time and place that Mr. Hinckley is to spend outside the supervision of his mother. During any time that Mr. Hinckley spends out of the supervision of his mother, he is required to carry a cell phone, to be provided by his mother. However often the frequency of itineraries, they must include specific details regarding the time that Mr. Hinckley will spend out of the presence of his mother on each visit to his parents' home.

4. Mrs. Hinckley will sign and agree to the "Agreement to Assume Supervisory Responsibility for Patient while on Conditional Release."

5. Mr. Hinckley and his mother will maintain telephone contact with the Hospital at least once a day during each visit.

6. Mr. Hinckley will meet with Dr. John J. Lee, a psychiatrist in the area near his parents' community, at least once during each visit. The appointment times will be determined and agreed upon in advance and included in the itinerary submitted by the Hospital to the Court. Dr. Lee will submit a report to the Hospital after each appointment and communicate orally with Mr. Hinckley's treatment team, as needed, regarding their sessions. If for any reason outside the control of Mr. Hinckley, his mother, or Dr. Lee, one of these appointments must be cancelled during a particular visit and cannot be rescheduled during the same visit, the Hospital will notify the Court of the reasons for the cancellation in its written report submitted to the Court following each visit (pursuant to Paragraph 16 of this Order). Every effort will be made to reschedule a missed appointment during the same visit. Any refusal by Mr. Hinckley to meet with Dr. Lee would constitute a violation of his conditions of release.

---

1. Within the confines of the Hinckleys' home, Mr. Hinckley will be considered to be under his mother's supervision so long as she is in the home with him at all times. They need not always be in the same room.

7. St. Elizabeths Hospital remains Mr. Hinckley's residence and the treatment team remain his treating physicians.

8. If there are any signs of decompensation or deterioration in Mr. Hinckley's mental condition, no matter how slight, of danger to himself or others, or of elopement, Mr. Hinckley will immediately be returned to the Hospital.

9. Mr. Hinckley will be permitted to use the Internet in his parents' home only under the constant supervision of his mother or with the use of technology or technologies that can both track his Internet use and restrict it to the use of certain sites, such as ones that provide online courses. The use of the Internet, what sites will be visited, and what goals will be met through that use will be determined in advance and provided in the Hospitals' itinerary. If Mr. Hinckley's Internet use is monitored through the use of a tracking and restrictive technology, the Hospital treatment team must review his usage after every visit to determine that it is in compliance with the itinerary and his treatment plan. Any deviation from this usage will be considered a violation of Mr. Hinckley's conditions of release.

10. Mr. Hinckley and his mother will sign and agree to adhere to the "Media Plan To Be Utilized for Patient While On Conditional Release" which provides that any effort to contact the media, either by Mr. Hinckley or by his mother, in person or by any other means while Mr. Hinckley is on conditional release, will constitute a violation of this conditional release. Mr. Hinckley's siblings will sign and agree to adhere to the same Media Plan. If approached by the media, Mr. Hinckley and members of his family will decline to speak with them, and if the media persists, the Mr. Hinckley and the members of his family will withdraw.

11. If there are any negative incidents regarding the public or the media, Mrs. Hinckley will immediately return to her residence and call the Nursing Supervisor's Office at the Hospital. If so directed, they will return to the Hospital.

12. Mr. Hinckley will not be allowed any contact with Leslie DeVeau, either in person or by telephone, during the course of the conditional release. Any contact with Ms. DeVeau will be considered a violation of Mr. Hinckley's conditional release, and Mr. Hinckley will be returned immediately to the Hospital.

13. Mr. Hinckley will continue to receive psychotropic medication during these activities, and any failure to self-medicate will be a violation of the conditional release and Mr. Hinckley will be returned immediately to the Hospital.

14. After each visit, Mr. Hinckley's mother will provide the Hospital with a completed "Individualized Relapse Prevention Plan Feedback From Responsible Person Supervising Patient While On Conditional Release" form. If either or both of Mr. Hinckley's siblings is present for a visit, that sibling or those siblings shall individually complete a "Individualized Relapse Prevention Plan Feedback From Responsible Person Supervising Patient While On Conditional Release" form, and return it to the Hospital (the form can be faxed or otherwise

transmitted to the Hospital if the sibling is not present when Mr. Hinckley is returned to the Hospital after the visit).

15. Mr. Hinckley will fill out the "Individualized Relapse Prevention Plan Feedback From Patient While On Conditional Release" form within two hours of returning to the Hospital after each visit.

16. The treatment team will interview Mr. Hinckley and his mother after each visit. If either or both of Mr. Hinckley's siblings is present for a visit, that sibling or those siblings will be interviewed, either in person or by phone after the visit. The Hospital will write a detailed report following each visit and submit that report under seal to the Court. That report will be provided to both counsel for the defense and counsel for the government. The Hospital will continue to submit a report after each visit even if it does not submit a detailed itinerary prior to each visit, as discussed in Paragraph 3 of this Order.

17. Mr. Hinckley and his mother will stay at the Hinckleys' residence, and Mr. Hinckley will not be permitted to leave unless accompanied by his mother or unless his time spent alone is part of the therapeutic plan devised by the Hospital prior to the visit and submitted to the Court in accordance with Paragraphs 1 and 3 of this Order. Mr. Hinckley will not be permitted to leave his mother's supervision except under the conditions stated. Any attempt to do so would constitute a violation of his conditions of release.

18. Should Mr. Hinckley fail to adhere to any of the conditions of release

imposed on him by this Order, this conditional release will be terminated immediately.

SO ORDERED.